**Affirmed as Modified and Memorandum Opinion filed August 13, 2015.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-14-00585-CR**
**NO. 14-14-00586-CR**
**NO. 14-14-00587-CR**

**RYAN VICTOR MOLNOSKEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Cause Nos. 71937, 66495 & 66494**

## MEMORANDUM OPINION

In this appeal from multiple judgments, we are asked to consider four issues, three of which involve the trial court's assessment of attorney's fees and court costs, and one of which involves an Eighth Amendment challenge to a forty-year sentence for injury to a child. We conclude that the trial court erroneously assessed

the attorney's fees and a portion of the court costs; however, there is no error in the sentence imposed. We modify the judgments and affirm as modified.

## BACKGROUND

Appellant was arrested in 2011 for driving while intoxicated. Because appellant refused to participate in field sobriety tests, the arresting officers obtained a warrant for a blood draw and transported him to an emergency care center. Appellant physically resisted the blood draw once when he arrived at the care center. While in handcuffs, he jerked away from the officers, who were forced to restrain appellant on the floor. Appellant kicked and thrashed about on the floor, and during the struggle, an officer suffered a cut to his forearm and a bruise and abrasion to one of his knees.

Appellant continued to be combative even after the blood draw was over. When he was escorted back to the patrol car, appellant started kicking at the windows of the cage. The officers removed appellant from the patrol car and placed him in leg restraints. Before being placed back inside the vehicle, appellant spat in the face of one of the officers.

Appellant was charged in Cause Number 66494 with assault on a public servant and in Cause Number 66495 with harassment of a public servant. Appellant pleaded guilty to both charges, but the trial court deferred an adjudication of guilt and placed him on community supervision for a period of five years.

In 2013, before his community supervision had ended, appellant caused a violent disturbance at his girlfriend's house. The disturbance started after appellant smoked crack cocaine and then tried to leave for the store in his girlfriend's car. When his girlfriend took the car keys away, appellant punched her in the chest and

face. The girlfriend escaped from appellant, ran into her house, and locked appellant outside. Appellant broke down the door and forced himself in.

The girlfriend's mother and sister tried to calm appellant down, but he only became more aggressive. Appellant ran upstairs to where his four-year-old daughter was sleeping and jerked her out of bed. Appellant carried his daughter downstairs, but he tripped near the bottom step and fell on top of her. When the daughter began to cry, appellant put her in a choke hold. The family pleaded with appellant to stop, but appellant responded, "If I can't have her, no one can." Appellant then lifted his daughter up and "slammed" her down on a tile floor. The daughter stopped breathing and suffered trauma to the head, but she ultimately recovered.

The State moved to adjudicate guilt in Cause Numbers 66494 and 66495, based in part on appellant's assault on his daughter. The State also brought forth a new charge in Cause Number 71937 for injury to a child. Appellant pleaded true to all allegations in the motions to adjudicate, and he pleaded guilty to the new charge of injury to a child. As for the first two cause numbers, the trial court accepted the pleas of true, entered judgments adjudicating guilt, and sentenced appellant to ten years' imprisonment. On the third cause number, the trial court accepted the plea of guilty, entered a judgment of conviction, and sentenced appellant to forty years' imprisonment.

## ATTORNEY'S FEES

In his first issue, appellant challenges the trial court's assessment of $2,850 in attorney's fees. These fees were assessed in the judgment adjudicating guilt in Cause Number 66494; no fees were ever assessed in the other two cause numbers.

Appellant argues that the attorney's fees should be removed from the judgment because he is indigent. Framing his issue as one of legal insufficiency, appellant contends that there is no evidence that he is capable of reimbursing the State for the costs of his appointed counsel.

Article 26.05 of the Code of Criminal Procedure provides the authority for ordering the "compensation of counsel appointed to defend." Section (g) of that article states as follows:

> If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay.

Under this provision, the defendant's financial resources and ability to pay are "explicit critical elements" in the trial court's determination of the propriety of ordering reimbursement of costs and fees. *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). We review the evidence in the light most favorable to the judgment when deciding whether the record contains legally sufficient evidence to support these elements. *Id.* at 557.

The record shows that appellant filed affidavits of indigence in all three of his cause numbers. The affidavits establish that appellant was unemployed at the time of his arrest, that he was imprisoned as he awaited trial, and that he had no assets or sources of income. Based on the affidavits, the trial court found that appellant was indigent and entitled to the appointment of counsel.

"A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." Tex. Code Crim. Proc. art. 26.04(p). The State concedes that this presumption carried through to the end

of the case because no evidence was ever presented that appellant was capable of paying for the costs of his appointed counsel.

Despite the concession, the State argues that appellant is still required to pay $850 out of the $2,850 in attorney's fees that the trial court assessed in the judgment adjudicating guilt. The State asserts that this $850 portion represents attorney's fees that appellant was originally ordered to pay as a condition of his community supervision in the trial court's order of deferred adjudication. Relying on the recent *Riles* decision from the court of criminal appeals, the State argues that appellant waived his challenge to this $850 portion because he did not directly appeal that issue from the order of deferred adjudication. *See Riles v. State*, 452 S.W.3d 333, 337–38 (Tex. Crim. App. 2015) (holding that a defendant procedurally defaults on a sufficiency challenge to attorney's fees if the defendant does not bring a direct appeal from the order first assessing those attorney's fees).

We conclude that *Riles* is distinguishable. In that case, a bill of costs was prepared after a judgment adjudicating guilt, and the bill of costs expressly stated that the attorney's fees were derived from the "Original Plea Agreement," rather than the adjudication proceeding. *Id.* at 335. By contrast, the record in this case contains no similar notation or proof. The bill of costs contains a single line relating to attorney's fees. The description on that line is "Indigent Attorney," and the charge assessed is a mere two dollars.

The State asserts, in a footnote, that the trial court imposed an "additional $2,000 in attorney's fees" after the adjudication proceeding, but the State provides no record citation for that assertion. After conducting our own independent review of the record, we cannot find any evidence that would support the State's claim. There is no itemized expense report from appellant's appointed counsel

establishing the amount of costs that were incurred during the adjudication proceeding. The trial court did not explain the calculation of costs either.

We also note that there is no evidence showing whether the $850 was paid or unpaid by 2013, when appellant was arrested and thrown in jail for assaulting his daughter. Thus, we cannot know whether the trial court assessed $2,850 in new attorney's fees for the adjudication proceeding alone, or whether the trial court combined $850 in old attorney's fees with $2,000 in new attorney's fees for costs from both the original plea hearing and the adjudication proceeding.

Because the State does not dispute that appellant is indigent and because there is no evidence that any portion of the $2,850 was originally assessed in the order of deferred adjudication, we conclude that there is legally insufficient evidence that appellant has the financial resources and ability to repay $2,850 in costs that were expended on appointed counsel. We modify the judgment in Cause Number 66494 and delete the order to pay $2,850 in attorney's fees.

## BILL OF COSTS

In his second issue, appellant argues that there is legally insufficient evidence to support the $294 in court costs from Cause Number 71937. Appellant argues that these costs are unsupported by the record because, at the time he submitted his brief, there was no bill of costs on file relating to Cause Number 71937. Instead, the clerk's record for Cause Number 71937 mistakenly contained the bill of costs for Cause Number 66495.

Appellant requested a supplemental clerk's record containing the correct bill of costs for Cause Number 71937. The supplemental record was filed in this court after appellant submitted his brief. Appellant did not file a reply brief.

We review the assessment of court costs on appeal to determine if there is a basis for the costs, not to determine whether there was sufficient evidence offered at trial to prove each cost assessed in the judgment. *See Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). We do not apply the traditional standard of review for sufficiency of the evidence. *Id.*

Generally, a bill of costs must (1) contain the items of cost, (2) be signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost, and (3) be certified. *Id.* at 392–93; *see also* Tex. Code Crim. Proc. arts. 103.001, 103.006. Here, the bill of costs in the supplemental clerk's record contains an itemized list of costs in appellant's case. The bill of costs is signed by a deputy district clerk, and the district clerk has certified that the document is a true and correct copy of the original. Accordingly, there is a sufficient basis for the court costs assessed against appellant.

## WARRANT AND BOND FEE

In his third issue, appellant challenges a $70 warrant and bond fee in Cause Number 71937. This issue is somewhat unusual because, as we explained above, appellant did not have a copy of the bill of costs from that cause number when he originally filed his brief. With the bill of costs omitted from the record, appellant could not have known that this fee was assessed against him.

Appellant acknowledged this omission, but he asserted the issue nonetheless in the event that this court treated the mistakenly filed bill of costs from Cause Number 66495 as the actual bill of costs from Cause Number 71937. Now that the clerk's record has been supplemented, we can confirm that the bills of costs from both cause numbers are identical. Because appellant was indeed assessed a $70 warrant and bond fee in Cause Number 71937, the factual basis for appellant's argument remains the same.

The bill of costs describes the $70 fee as "WARRANT/BOND." Appellant argues that the fee is inappropriate because a warrant did not issue for his arrest and because a bond was never processed. The State did not respond to these arguments in its brief.

"An officer may not impose a cost for a service not performed or for a service for which a cost is not expressly provided by law." Tex. Code Crim. Proc. art. 103.002. We presume that the services identified in a bill of costs were actually performed or provided by law. *See id.* art. 103.009(c) ("A statement of an item of cost in a fee record is prima facie evidence of the correctness of the statement.").

The costs pertaining to warrants and bonds are specifically prescribed by article 102.011 of the Code of Criminal Procedure, which provides that a defendant may be assessed the following fees, among others:

- $5 for a warrantless arrest, *id.* art. 102.011(a)(1);

- $50 for the execution of an arrest warrant, *id.* art. 102.011(a)(2); and

- $10 for taking and approving a bond, *id.* art. 102.011(a)(5).

Assuming that appellant was only arrested once, the State could assess a $70 fee under this schedule of fees only if an arrest warrant was executed ($50) and two separate bonds were taken and approved ($10 each).

Appellant claims that he was arrested without a warrant in Cause Number 71937. In support of this claim, appellant cites to a page from his presentence investigation report ("PSI"), which shows that an officer was dispatched to the scene of a disturbance, where the officer arrested appellant on a child endangerment charge. However, this discussion in the PSI specifically concerns an incident that occurred in 2011, more than two years before the events alleged in Cause Number 71937. Appellant has not produced any evidence that would negate

8

the presumption that an arrest warrant was actually executed in the instant case under review.[1]

As for the bond issue, the state of the evidence is much different. Appellant provided uncontroverted testimony during the plea hearing that he was unable to post a bond in this case. Appellant's testimony is confirmed by the judgment of conviction. The trial court credited appellant with 241 days of jail time in the judgment of conviction, and appellant was arrested 241 days before the date that the judgment was entered. Because the evidence conclusively shows that appellant did not post a bond, he cannot be required to pay a fee for the taking and approving of a bond.

We modify the judgment of conviction in Cause Number 71937 and remove $20 in court costs because the bill of costs supports, at most, a $50 fee for the execution of an arrest warrant.

### EIGHTH AMENDMENT CHALLENGE

In his fourth issue, appellant contends that his forty-year sentence for injury to a child is grossly disproportionate to the crime and, therefore, in violation of the Eighth Amendment's prohibition against cruel and unusual punishments.

Generally, a term-of-years sentence is neither cruel nor unusual if it falls within the statutory range, as this one does here. *See Perez v. State*, 478 S.W.2d 551, 552 (Tex. Crim. App. 1972); *Jagaroo v. State*, 180 S.W.3d 793, 802 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The United States Supreme Court has recognized a limited exception to this rule, however. In *Harmelin v. Michigan*,

---

[1] A defendant has other avenues, besides a direct appeal, for challenging the correctness of his court costs. *See Perez v. State*, 424 S.W.3d 81, 87 (Tex. Crim. App. 2014) (Alcala, J., concurring). Appellant could have disputed the warrant fee in a motion filed with the trial court, but there is no record that he did so in this case. *See* Tex. Code Crim. Proc. art. 103.008.

the Court stated that the Eighth Amendment encompasses a "narrow proportionality principle," which requires a punishment to be graduated to the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring in part and concurring in judgment); *see also Solem v. Helm*, 463 U.S. 277, 292 (1983).

When conducting a proportionality analysis, the reviewing court must first determine whether "comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *See Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in judgment). If that threshold inference has been met, the court must compare (1) the challenged sentence against the sentences of other offenders in the same jurisdiction, and (2) the sentences imposed for the same crime in other jurisdictions. *Id.* The challenged sentence is only cruel and unusual if this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate to [the] crime." *Id.*; *accord Welch v. State*, 335 S.W.3d 376, 380 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Under this standard, successful challenges to particular sentences are "exceedingly rare." *See Ewing v. California*, 538 U.S. 11, 21 (2003).

Here, the evidence shows that appellant put his four-year-old daughter in a choke hold, lifted her up, and then slammed her down into a tile floor. The child stopped breathing at the scene, but she was able to be resuscitated. She suffered serious injuries.

Appellant acknowledged during the plea hearing that he is "a monster" for what he did. Considering that the trial court could have sentenced appellant to as much as ninety-nine years' or life imprisonment, we conclude that a comparison of the crime committed and the sentence imposed does not lead to an inference of gross disproportionality. *See Lawrence v. State*, 420 S.W.3d 329, 333 (Tex. App.—

Fort Worth 2014, pet. ref'd) (holding that a maximum sentence of confinement was not grossly disproportionate for injury to a child).

## CONCLUSION

In Cause Number 66494 (Appeal No. 14-14-00587-CR), we modify the judgment adjudicating guilt and reduce the amount of attorney's fees from $2,850 to zero. As modified, the judgment is affirmed.

In Cause Number 66495 (Appeal No. 14-14-00586-CR), the judgment adjudicating guilt is affirmed.

In Cause Number 71937 (Appeal No. 14-14-00585-CR), we modify the judgment of conviction and reduce the amount of court costs from $294 to $274. As modified, the judgment is affirmed.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Brown, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).

11